**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 07-1225

THOMAS M. BECKNER,

Plaintiff - Appellant,

versus

AMERICAN BENEFIT CORPORATION; EMPLOYER-
TEAMSTERS LOCAL NOS. 175 AND 505 PENSION TRUST
FUND; ROBERT T. BIGGS; FRANK T. LITTON, JR.;
JIM WAUGH; RICHARD K. HALL; RALPH WINTER;
CLIFF BRACKMAN; DENNIS MORGAN, Trustees,

Defendants - Appellees.

Appeal from the United States District Court for the Southern
District of West Virginia, at Huntington.  Robert C. Chambers,
District Judge.  (3:06-cv-00184)

Argued:  December 6, 2007          Decided:  April 10, 2008

Before MOTZ and GREGORY, Circuit Judges, and Henry F. FLOYD, United
States District Judge for the District of South Carolina, sitting
by designation.

Affirmed by unpublished per curiam opinion.

William D. Ryan, Wheeling, West Virginia, for Appellant.  Michael
John Del Giudice, CICCARELLO, DEL GIUDICE & LAFON, Charleston, West
Virginia;  Michael  A.  Katz,  WILLMAN  &  ARNOLD,  Pittsburgh,
Pennsylvania, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Appellant Thomas M. Beckner sought retirement benefits pursuant to a Plan titled the Kroger 30-And-Out Benefit of $2,500, although he had never been a Kroger employee. In the alternative, Beckner requested the 30-And-Out Benefit of $2,000. The fiduciary denied both claims.

Beckner subsequently filed suit in the district court under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq., against American Benefit Corporation (ABC), Employer-Teamsters Local Nos. 175 and 505 Pension Trust Fund (Fund), and Robert T. Biggs, Frank T. Litton, Jr., Jim Waugh, Richard K. Hall, Ralph Winter, Cliff Brackman, and Dennis Morgan (Trustees) contending improper denial of the Plan's Kroger 30-And-Out Benefit of $2500 per month. Alternatively, Beckner sought the Plan's 30-And-Out Monthly Benefit of $2000 per month.

The parties filed cross motions for summary judgment. In addition, Beckner filed two motions for discovery. The district court denied both of Beckner's motions for discovery and entered judgment for ABC, the Fund, and the Trustees. This appeal followed.

I.

The relevant facts, as set forth in the district court's opinion, are as follows:

3

The Fund was created in 1958 by certain local unions and various employers when they entered into agreements to provide pension benefits to participants. The Plan was restated, reconstituted, and re-adopted effective May 1998. [Beckner] has participated in the Fund since 1974 . . . . Although [Beckner] concedes that he has never worked as a Kroger employee, he asserts that the Plan does not provide that the Kroger 30-And-Out Benefit is only for Kroger employees and he otherwise meets all the qualifications to obtain the benefit.

By letter dated September 14, 2004, ABC denied [Beckner's] request for the Kroger 30-And-Out Benefit of $2,500 because [Beckner] was not a Kroger employee. ABC also denied [Beckner's] request for the 30-And-Out Benefit of $2,000 because [Beckner] did not meet the Plan's $33.34 multiplier rate as of December 31, 1987. [Beckner] appealed these decisions to the Fund's Appeal Committee, which was comprised of two trustees and two "Fund Consultants" from ABC. At their meeting held on November 3, 2004, the Appeals Committee recommended that [Beckner's] appeal be approved. On November 18, 2004, the Trustees met and denied [Beckner's] appeal. The minutes from that meeting provide, in relevant part:

> Excerpts from the Special Trustees' meeting held March 31, 1997 and the regular Trustees' meeting of September 10, 1998 were reviewed. It was noted the Minutes of September 10, 1998 reflected the increase from $2,000 to $2,500 per month applied only to employees of Kroger and that historically the Kroger 30-and-Out Benefit had only been applicable to Kroger employees. The Plan provisions requiring a minimum multiplier of $33.34 on December 31, 1987 or contributions at the rate required under the National Master Freight, United Parcel Service or National Tank Haul Agreement to qualify for the $2,000 per month 30-and-Out Benefit were discussed. **MOTION** was then made, seconded and passed to deny Mr. Beckner's application for a Kroger 30-and-Out Benefit on the basis he had never been an employee of the Kroger Company and to deny Mr. Beckner's application for the $2,000 per month 30-and-Out Benefit on the basis the minimum multiplier and contribution requirements had not been satisfied.

4

Minutes of Trustees' Meeting (Nov. 18, 2004). [Beckner] was permitted to appeal this decision and argue that he detrimentally relied upon a printing error contained in the 2001 Summary Plan Description (SPD).

On May 4, 2005, the Appeals Committee met and discussed [Beckner's] appeal. [Beckner] appeared at the hearing and told the Appeals Committee that he and his wife believed he qualified for the Kroger 30-and-Out Benefit of $2,500 under the 2001 SPD. The Appeals Committee deferred the action to the Trustees. On May 19, 2005, the Trustees met and discussed [Beckner's] case. After discussing the language of the Plan and the SPD, the Trustees denied [Beckner's] appeal "on the basis the Kroger 30 and Out benefit is available only to employees of Kroger Company and that . . . Beckner did not provide a preponderance of evidence to prove that he had detrimentally relied on the language of the Summary Plan Description." Minutes of Trustees' Meeting (May 19, 2005). On appeal to [the district court], [Beckner] asserts that nowhere in the Plan does it provide that the "Kroger 30-And-Out Benefit" of $2,500 per month is only available to Kroger employees.

(J.A. 613-15.)

II.

On appeal, Beckner argues that the district court erred in applying the abuse of discretion standard of review to the Fund and the Trustees' denial of his claim. The Court examines this issue of law de novo. Colucci v. Agfa Corp. Severance Pay Plan, 431 F.3d 170, 176 (4th Cir. 2005).

Where "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan[,]" the court's consideration is limited to whether the Trustees abused their discretion in denying

benefits.  Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).  Therefore, we must determine if such authority can be found here.  In our review of the record before us, we have located the following:

First, Article VIII, Section 8.01 of the Plan, provides that "Any payment of benefits under the Plan shall be contingent upon the approval by the Trustees of the application for benefits which a Participant or a Beneficiary must complete and file with the Trustees."  (J.A. 496.)

Second, Article X, Section 10.01 of the Plan states that "This Plan shall be administered by the Trustees in accordance with and pursuant to the Trust Agreement."  (J.A. 502.)

Third, in Section 2.04 of Article II of the Trust Agreement, we read that

> The Trustees shall formulate a written plan for the payment of such retirement pension benefits . . . as they deem feasible. . . . Said Trustees shall draft procedures, regulations, and conditions for the operation of the Plan, including . . . conditions of eligibility for covered Employees and Participants, procedure of claiming benefits, schedules of types and amounts of benefits to be paid and procedure for the distribution of such benefits.

(J.A. 548.)

Fourth, we find in Section 2.05, Article II of the Trust Agreement that "The Pension Plan may be amended by the Trustees

from time to time as they in their discretion may determine."
(J.A. 548.)

Fifth, Section 3.01 of Article III of the Trust Agreement

provides, in relevant part, that "The administration of the Trust

Fund shall be vested in six Trustees, sometimes referred to as the

Board of Trustees, three of whom shall be Employer Trustees, and

three of whom shall be Union Trustees."  (J. A. 549.).

Sixth, Article VII, Section 7.02 of the Trust Agreement states

that

> All questions or controversies, of whatever character,
> arising in any manner or between any parties or persons
> in connection with the Trust Fund or the operation
> thereof, whether as to any claim for any benefits
> preferred by any Employee, or any other person, or
> whether as to the construction of the language or meaning
> of the rules and regulations adopted by the Trustees or
> this instrument, or as to any writing, decision,
> instrument or accounts in connection with the operation
> of the Trust Fund or otherwise, shall be submitted to the
> Board of Trustees for decision, and the decision of the
> board . . . shall be binding upon all persons dealing
> with the Trust Fund or claiming any benefits thereunder.

(J.A. 558.)

Seventh, Amendment No. 2, Amending Article VII, Section 5.01

of the Trust Agreement to add subsection n., provides that "To

construe and interpret this Agreement and the Plan established

hereunder, and any such construction or interpretation adopted by

the Trustees in good faith shall be binding upon the Union,

Employers, Employees and Participants."  (J.A. 564.)

7

Having carefully reviewed these documents, we are of the firm opinion that Plan grants the Trustees "discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire, 489 U.S. at 115. Accordingly, the district court's decision to apply the abuse of discretion standard was not error.

III.

Beckner next contends that the trial court erred in granting summary judgment to the Fund and the Trustees as to his eligibility for the Kroger 30-And-Out Benefit. We review de novo the trial court's granting of a motion for summary judgment. Bryant v. Bell Atlantic Md., Inc., 288 F.3d 124, 132 (4th Cir. 2002).

According to the Trustees, to be entitled to the Kroger 30-And-Out Benefit, one first must have been employed by Kroger. The minutes of a September 10, 1998, Trustees' meeting support that this historically has been the Trustees' interpretation. The minutes provide, in relevant part, that

> Actuary Carlton reviewed exhibits, copies of which are attached to and become a part of these Minutes, which showed the cost of providing to **Kroger participants** a $2,500 minimum monthly benefit after thirty (30) years of contributory service on or after January 1, 2004.

> Actuary Carlton showed currently there are eight (8) **Kroger participants** under the Fund and four (4) would be affected by the benefit change. He showed the total

8

> Actuarial liability increase would be affected by the benefit change. He showed the total Actuarial liability increase would be $154,875 and the annual normal cost would increase $1,970. Actuary Carlton showed the additional yearly cost to the Fund, which included the amortization payment and normal cost would be $14,708.
>
> Trustee Hall made a motion to approve a minimum benefit of $2,500 a month after thirty (30) years of contributory service beginning on or after January 1, 2004, for **Kroger participants**, provided the participant has worked eight (8) of the last ten (10) years at the Kroger rate and contingent upon ratification of contracts increasing their contribution levels. The **MOTION** was seconded and passed.

(J.A. 143) (last emphasis in original; all others added).

A memorandum to the "Fund Participants Covered Under the Kroger Plan of Benefits" also supports the Trustee's position. The memorandum provides, in relevant part, that "since Kroger did not become part of this Plan until April 1, 1974, you will not be able to retire under this Benefit until on or after April 1, 2004." (J.A. 284.) Simply stated, the date on which Kroger became a part of the Plan is immaterial if, as Beckner maintains, the Kroger 30-And-Out Benefit is open to anyone with the required contribution rate. Because the memorandum states that the benefit is unavailable to the participants until thirty years after Kroger joined the Plan, however, it is only reasonable to interpret the letter as having been written with the understanding that the Kroger 30-And-Out Benefit was for Kroger employees only.

9

Moreover, although the Appeals Committee initially recommended that Beckner be granted the Kroger 30-And-Out Benefit, the Trustees, at their November 18, 2004, meeting, decided otherwise. (J.A. 204, 208.) "It was noted the Minutes of September 10, 1998[,] reflected the increase from $2,000 to $2,500 per month applied only to employees of Kroger and that historically the Kroger 30-And-Out Benefit had only been applicable to Kroger employees." (J.A. 208.)

In sum, because we find the Trustees' interpretation that Beckner must have been employed by Kroger to reap the Kroger 30-And-Out Benefit to be reasonable, we must affirm the district court on this issue.

IV.

Beckner also maintains that the district court erred in granting summary judgment to the Plan on the issue as to whether Beckner is entitled to receive the 30-And-Out Benefit.

The Plan provides, in relevant part that

To be eligible for a 30-And-Out Monthly Benefit of $2,000, a Participant must retire from Covered Employment at any age, and:

(i) have been an active Participant on or after January 1, 1994, and

(ii) retire at any age after having thirty (30) Years of Future Credited Service (Contributory Service), and

10

(iii) have had contributions made to the Fund on his/her behalf at the United Parcel Service, National Master Freight, National Tank, Kroger or a Contribution Rate that had a $33.34 multiplier at December 31, 1987, and

(iv) have had contributions at the rate of $368.33 or greater per month made to the Fund on his/her behalf for six (6) out of the last eight (8) years of his/her participation in the Fund prior to retirement.

(J.A. 458.)

The evidence before us establishes that as of December 31, 1987, Beckner's multiplier was $25.15 per month. This rate fails to satisfy the minimum multiplier of $33.34, as provided above.

Nevertheless, Beckner maintains that because he meets the Kroger rate requirement, he is entitled to receive the 30-And-Out Benefit. The Trustees, however, argue that the Kroger contribution rate applies only to Kroger employees. Therefore, according to the Trustees, because Beckner was not a Kroger employee and did not fulfil the minimum multiplier of $33.34, he is barred from receiving the 30-And-Out Benefit.

Finding this interpretation of the Plan to be reasonable, we agree with the district court's decision to enter judgment for the Fund and the Trustees on this issue.

V.

Beckner next claims that the district court committed reversible error in granting summary judgment to ABC on the

11

question of whether ABC is a fiduciary under the terms of the Plan. We review this question of law de novo. Bryant, 288 F.3d at 132.

Section 1002(21)(A) of Title 29 of the United States Code defines a fiduciary under an ERISA plan "as a person who exercises any discretionary authority or control over the management of the benefit plan or the management or disposition of its assets, a paid investment advisor, or a person with any discretionary authority or responsibility in administering a benefit plan covered by the Act." 29 U.S.C. § 1002(21)(A).

From our review of the record, we have found no evidence to support the suggestion that ABC had a fiduciary role in Beckner's case. The final decision to deny the benefits that Beckner sought rested with the Trustees alone. As such, we are unable to find that the district court erred in granting ABC's motion for summary judgment.

VI.

Finally, Beckner complains that the district court erred in denying his requests for discovery in this matter. The Court affords substantial discretion to a district court in managing discovery and reviews discovery rulings only for an abuse of that discretion. Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc., 43 F.3d 922, 929 (4th Cir. 1995).

According to Beckner, the district court should have allowed him the opportunity to cross examine those involved in the denial of his claims.  He also argues that the record may be incomplete.

Contrary to Beckner's contentions otherwise, this is a straight-forward ERISA action.  The fiduciary, in this instance the Trustees, made a decision that the claimant disagreed with so the claimant brought suit in the district court.  The district court was presented with the record that the Trustees relied on to make their decision.  Because of the terms of the Plan, which granted the Trustees the "discretionary authority to determine eligibility for benefits or to construe the terms of the plan," Firestone Tire, 489 U.S. at 115, the district court reviewed the Trustees' decision for an abuse of their discretion.  Finding that the Trustees' interpretation of the Plan was reasonable, the district court ruled in favor of the Fund and the Trustees.

We are unable to fathom how the allowance for additional discovery, and thus additional evidence, could modify that determination.  Therefore, it is our judgment that the district court did not err in denying Beckner's motion for discovery.


VII.

In light of the foregoing discussion and rationale, the judgment of the district court is

AFFIRMED.

13